UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROBERT J. CONANT,

    Plaintiff,

    v.    Case No. 21-C-1344

TIM BERNKLAU,

    Defendant.

# DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

    Plaintiff Robert Conant, who is currently representing himself, brought this 42 U.S.C. § 1983 action against Defendant Brown County Sheriff's Detective Lieutanant Tim Bernklau for unlawful detention in violation of the Fourth Amendment. In particular, Conant asserts that he was unlawfully detained as a result of the alleged misrepresentations or omissions contained in Lt. Bernklau's investigative report, which recommended that Conant be charged with first-degree reckless homicide for the overdose death of Jason Kainz. This matter comes before the court on Lt. Bernklau's motion for summary judgment. For the following reasons, the motion for summary judgment will be granted and the case dismissed.

## BACKGROUND

    On August 20, 2015, Lt. Bernklau was assigned a case of a possible heroin overdose death of 28-year-old Jason R. Kainz that occurred more than seven months earlier on January 11, 2015. The incident took place at Kainz' residence located in the town of Pittsfield, Wisconsin. Lt. Bernklau was instructed to look into several details and events in the days prior to the incident to determine who provided the heroin to Kainz that resulted in his death.

Sgt. Davidson was originally assigned to the case and had previously obtained statements from some of Kainz' family members, friends, and acquaintances. Kainz' sister, Natasha Kainz, provided a statement, which indicated that she received information from some of her brother's co-workers that Kainz was trying to get drugs a few days before he overdosed. She did not believe that the co-workers provided any drugs to Kainz. She also provided the name of Robert Conant and thought Kainz and Conant had recently started corresponding again. According to Ms. Kainz, Conant and Kainz had a drug-related history together and had met during drug rehabilitation treatment. She stated that she was suspicious of Conant due to this drug-related history. Ms. Kainz previously referred to Conant as "Bob."

Sgt. Davidson also obtained a statement from one of Kainz' co-workers, Elias Nieto. Nieto claimed he told Kainz that he would not help him get drugs because he knew Kainz had been clean for some time. He stated that Kainz indicated that he was going to get the drugs from his friend "Bob" but did not specify Bob's last name.

During the investigation, text messages were downloaded from Kainz' cell phone shortly after the time of his death. Lt. Bernklau reviewed the phone calls and text messages that were sent and received from Kainz' phone from January 9, 2015, to January 11, 2015. There were several phone calls and text messages between Kainz and "Bob," who was identified in Kainz' contacts as "Bob C." Lt. Bernklau cross-referenced Bob C.'s phone number using in-house police records and found that the phone number belonged to Robert J. Conant. Lt. Bernklau also looked up the phone number on "Whooster," a phone number application used by law enforcement to obtain subscriber information. The Whooster check revealed that the phone number was part of a Cellcom account and belonged to Robert Conant.

2

Case 1:21-cv-01344-WCG    Filed 03/14/24    Page 2 of 9    Document 37

After reviewing the text messages between Kainz and "Bob," Lt. Bernklau determined that several of the messages were likely coded discussions about drugs. For instance, on January 10, 2015, at 16:05:03 CST, Kainz texted Bob, "D bag," and later texted Bob at 16:50:20 CST, "Making a fix for that and then some." Def.'s Proposed Findings of Fact (DPFOF) ¶¶ 26–27, Dkt. No. 21. Lt. Bernklau suspected that Kainz injected the heroin immediately after he sent the text. On January 10, 2015, at 17:19:28 CST, Bob texted Kainz, "Im Fucked up." *Id.* ¶ 29. Conant counters that, when the text messages are read in context, the messages do not reveal "any kind of illegal 'drug-deal' transaction" or suggest that the messages are about a coded drug transaction. Am. Compl. ¶ 29, Dkt. No. 3.

Sgt. Davidson and Sgt. Aronstein obtained video surveillance from some of the private residences near Kainz' residence that had personal surveillance systems, which showed images of a white van in the area. There were also witness accounts of a white van being present near Kainz' residence on January 9, 2015, or possibly the day prior. The white van was described as a work van that had "ACR" written on the side and a ladder rack. Lt. Bernklau checked Department of Transportation records for the registered vehicles owned by Conant, which indicated that Conant owned a 2004 Ford Econoline Van E150, white in color. After further investigation, Lt. Bernklau learned that the van was once owned by Air Condition Refrigeration of Green Bay, or "ACR." Lt. Bernklau attempted to interview Delores Shipley at her house regarding the white van that had been at the residence on January 8, 2015. He claims that Shipley refused to talk to him and would not let him enter her house. Lt. Bernklau states he did not include in his report that Shipley refused to talk to him because he did not gain any information from speaking with her.

Conant, on the other hand, asserts that, not only did Shipley talk to Lt. Bernklau, she told him that the picture of a white van Lt. Bernklau showed her was not the van she had seen at Kainz'

3

residence on January 8, 2015. Conant supports his contention with a reference to the report of a private investigator who interviewed Shipley in preparation for the trial of the criminal charges Conant had been facing. According to Conant, the investigator interviewed Shipley, who provided a video recording from her security camera of the Ford van pulling into Kainz' driveway on January 15, 2015. Shipley indicated that an officer had shown her a picture of what was apparently Conant's Ford van parked at Conant's residence. Shipley stated that she told the officer, who Conant infers was Lt. Bernklau, that the van in the photograph was not the van she had seen at Kainz' residence or recorded by her security camera. Conant contends that Lt. Bernklau's report gave the false impression that Shipley's eyewitness description of the van and the video she provided to Sgt. Davidson matched Conant's Ford van and failed to include the statement Shipley allegedly made to Lt. Bernklau that it was not the same van. *Id.* ¶¶ 33–35, 39.

On December 14, 2015, Narcotic Investigator (NI) Jordan Atlas advised Lt. Bernklau that one of his drug investigations, which involved Conant, was ending that day. NI Atlas told Lt. Bernklau to meet with him at the Drug Task Force (DTF) Office to discuss the operation. Lt. Bernklau went to the DTF Office, and NI Atlas informed him that he had a search warrant signed for Conant's residence, that he was in the process of locating Conant, and that he intended to arrest him away from his residence. Lt. Bernklau and NI Atlas decided they would both interview Conant once he was taken into custody. The next day, NI Atlas located Conant near his residence. Conant was taken into custody by DTF agents and transported him to the Green Bay Police Department to be interviewed.

NI Atlas interviewed Conant first regarding his drug investigation, which involved delivery of heroin and conspiracy to deliver heroin. Next, Lt. Bernklau interviewed Conant. During the interview, Lt. Bernklau asked him about his white Ford van. Conant told Lt. Bernklau that he

bought the van from a company called "ACR" in Green Bay a short time after he was released from prison. Lt. Bernklau asked Conant if he was aware that the DTF was executing a drug search warrant at his residence, and Conant responded that he was aware. Conant stated that he had some heroin underneath his dresser. Lt. Bernklau relayed this information to the DTF agents at Conant's house. Heroin was seized from Conant's home during a search conducted contemporaneously to his arrest.

Lt. Bernklau also asked Conant about Kainz' overdose death. Conant stated that he had not seen Kainz for about ten days prior to his death. Lt. Bernklau told Conant that he did not believe his statement was true based on the witness reports of the white Ford van that was at Kainz' house two days prior to his death. Conant replied, "Alright." DPFOF ¶ 60. Based on Lt. Bernklau's training and experience, a positive confirmation, such as "alright," after an accusatory statement is an indication of guilt. Lt. Bernklau told Conant that he had Kainz' phone records, there were several text messages between Conant and Kainz, and there was drug language used in the messages. Conant admitted that he did communicate with Kainz and texted about drugs, specifically crack and pain medication. Conant denied talking about heroin with Kainz prior to his death.

Lt. Bernklau states he showed Conant the surveillance video images of his van that were obtained from Kainz' neighbor across the street and asked him what the picture was of. Conant responded that it was a picture of his van. Lt. Bernklau informed Conant that the van in the picture stopped at Kainz' house on January 8, 2015. He asked Conant who had been driving the van if it was not Conant. Conant responded that he was not sure who used his van that day, but it could have been his employee, Eric Vanderboom. Conant now claims that the picture he was shown was the one Lt. Bernklau took of his van in his own driveway.

Based on the evidence obtained during his investigation, Lt. Bernklau recommended a charge of first-degree reckless homicide in accordance with Wis. Stat. § 940.02(a) for Robert J. Conant in the heroin overdose death of Jason Kainz. Lt. Bernklau never arrested Conant, and he did not make the decision or give the order to arrest Conant. The District Attorney's (DA) office did not make the decision to charge Conant until two years after Lt. Bernklau completed his investigation report and sent it to the DA's office. Lt. Bernklau's involvement with the case and the investigation ended after he submitted his report to the DA's office, though he was available for questions regarding his investigation and report at any time. The DA's office did not consult with Lt. Bernklau prior to charging Conant with first-degree reckless homicide. Upon being charged with Kainz' death, Conant was held in custody on a high cash bail. He was also being held on other charges. Lt. Bernklau was not involved in the decision to set Conant's bail at a particular amount. After considering the defenses' arguments regarding the statements Shipley made to the private investigator, the prosecutor assigned to the case ultimately filed a motion to dismiss the charges against Conant, which the trial court granted on November 27, 2018, and dismissed the case. Am. Compl. ¶ 67. Conant claims that, as a result of Lt. Bernklau's intentional misrepresentations and omissions in his report, Conant suffered one year of illegal and unconstitutional pre-trial detention in the Brown County Jail. *Id.* ¶ 1.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citation omitted). Summary

judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Conant asserts that Lt. Bernklau made misrepresentations and omissions in his investigation report and should be liable for Conant's unlawful detention. "The Fourth Amendment protects against unreasonable seizures, and the general rule is that Fourth Amendment seizures are reasonable only if based on probable cause to believe that the individual has committed a crime." *Moorer v. City of Chicago*, 92 F.4th 715, 720 (7th Cir. 2024) (cleaned up). "[T]he constitutional injury arising from a wrongful pretrial detention rests on the fundamental Fourth Amendment principle that a pretrial detention is a 'seizure'—both *before* formal legal process and *after*—and is justified only on probable cause." *Lewis v. City of Chicago*, 914 F.3d 472, 476–77 (7th Cir. 2019). Unlawful pretrial detention can occur from a variety of events, including when the probable cause determination is undermined by "the withholding of information by officers that would be material to" such a determination. *Moorer*, 92 F.4th at 720–21 (citation omitted). If the legal process "is tainted . . . by fabricated evidence—and the result is that probable cause is lacking, then the ensuing pretrial detention violates the confined person's Fourth Amendment rights." *Manuel v. City of Joliet, Illinois*, 580 U.S. 357, 369 n.8 (2017).

Conant argues that Lt. Bernklau fabricated evidence in his report in two ways: (1) Lt. Bernklau misinterpreted the text messages between Conant and Kainz and (2) Lt. Bernklau omitted exculpatory witness statements from Delores Shipley. Lt. Bernklau asserts that, because Conant did not respond to his Second Requests to Admit, the admissions are deemed admitted under Rule

36(a) of the Federal Rules of Civil Procedure and serve as the factual basis for his motion for summary judgment. If a matter is requested to be admitted pursuant to Rule 36, the party upon whom the request has been propounded must, within thirty days of service of the request, serve upon the party requesting the admission a written answer or objection addressed to the matter. *See* Fed. R. Civ. P. 36(a). If no such written answer or objection is served, Rule 36(a) provides that the matter is deemed admitted. *See id.*; *see also McCann v. Mangialardi*, 337 F.3d 782, 788 (7th Cir. 2003). "[A]dmissions made under Rule 36, even default admissions, can serve as the factual predicate for summary judgment." *United States v. Kasuboski*, 834 F.2d 1345, 1349–50 (7th Cir. 1987) (citation omitted).

On June 5, 2022, Lt. Bernklau served his Second Set of Interrogatories and First Requests for Admission on Conant. The First Set of Requests to Admit asked for the following admissions:

1. Admit that Sgt. Bernklau did not make any misrepresentations on the police report he drafted and which was referred to in the Amended Complaint.

2. Admit that Sgt. Bernklau did not make any "willful omissions" on the police report he drafted and which was referred to in the Amended Complaint.

3. Admit that Sgt. Bernklau did not make any misrepresentations to DDA Wendy Lemkuil regarding this case.

4. Admit that Sgt. Bernklau did not make any "willful omissions" to DDA Wendy Lemkuil regarding this case.

5. Admit that you were incarcerated on different charges at the time of the criminal complaint and allegations mentioned in your Amended Complaint.

Dkt. No. 23-1 at 1–2.

Conant did not respond to the Second Set of Interrogatories and First Requests for Admission. Based on his failure to respond to the Requests to Admit, Lt. Bernklau asserts that the admissions are deemed admitted under Rule 36(a) and may serve as the factual basis for the motion for summary judgment. *See Kasuboski*, 834 F.2d at 1349–50 ("[A]dmissions made under Rule 36,

8

even default admissions, can serve as the factual predicate for summary judgment." (citation omitted)); *see also* Fed. R. Civ. P. 36(b) ("A matter admitted under this rule is conclusively established.").

In response to the motion for summary judgment, Conant does not deny that he did not respond to the Second Set of Interrogatories and First Requests for Admission or attempt to withdraw the admissions, as permitted pursuant to Rule 36(b). Instead, Conant offers evidence to refute the facts deemed admitted in an attempt to raise a genuine issue of material fact. But "a party cannot attack issues of fact established in admissions by resisting a motion for summary judgment." *Kasuboski*, 834 F.2d at 1350 (citation omitted). By not responding to the Requests to Admit, Conant admitted that Lt. Bernklau did not make any misrepresentations or "willful omissions" in the police report he drafted that was submitted to the DA's office. Because the undisputed facts establish that Lt. Bernklau did not fabricate evidence that would result in Conant's unlawful pretrial detention, Lt. Bernklau is entitled to summary judgment on Conant's claim.

## CONCLUSION

For these reasons, Lt. Bernklau's motion for summary judgment (Dkt. No. 19) is **GRANTED**. The case is dismissed. The clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 14th day of March, 2024.

                                                        s/ William C. Griesbach
                                                        William C. Griesbach
                                                        United States District Judge